# BERNSTEIN LIEBHARD LLP
ATTORNEYS AT LAW
10 EAST 40TH STREET
NEW YORK, NEW YORK 10016

———

(212) 779-1414
FAX: (212) 779-3218
www.bernlieb.com

LAURENCE HASSON
LHasson@bernlieb.com

December 6, 2023

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

RE: Saye v. NIO Inc., 22-cv-7252 (VSB);
 Bohonok v. NIO Inc., 22-cv-7666 (VSB)

Dear Judge Broderick:

We represent Lead Plaintiff Dr. Mohammad Siddiqui and additional named plaintiff Barry King (together, "Plaintiffs") in the above-captioned consolidated matter. We write to apprise the Court of the November 30, 2023 Order (the "Order") by the Public Company Accounting Oversight Board ("PCAOB") Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions against PricewaterhouseCoopers Zhong Tian LLP, NIO Inc.'s auditor during the Class Period, which is relevant to the pending motion to dismiss before the Court. *Cf.* ECF No. 56 at 21-23; *id*. at 21-22, n. 20 & 21.

Attached as Exhibit 1 are the Order and the accompanying press release issued by the PCAOB. The Court may take judicial notice of these documents. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.,* 529 F. Supp. 3d 111, 124 n.4 (S.D.N.Y. 2021) (taking judicial notice of "publicly available websites [and] publicly available accounting and financial/auditing standards" including reports and findings issued by the PCAOB); *In re Aurora Com. Corp*., No. 20 CIV. 8282 (ER), 2021 WL 3595716, at *2 (S.D.N.Y. Aug. 13, 2021), *aff'd sub nom. In re Aurora Commercial Corp*., No. 21-2321-BK, 2023 WL 1813328 (2d Cir. Feb. 8, 2023) ("The Court may take judicial notice of press releases from government agencies").

Respectfully submitted,

/s/ Laurence J. Hasson

Laurence J. Hasson

LJH/jm
Enclosures

00766836;V1

# EXHIBIT 1



1666 K Street NW
Washington, DC 20006

Office: 202-207-9100
Fax: 202-862-8430

www.pcaobus.org

**Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions**

*In the Matter of PricewaterhouseCoopers Zhong Tian LLP,*

Respondent.

PCAOB Release No. 105-2023-044

November 30, 2023

By this Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions ("Order"), the Public Company Accounting Oversight Board ("Board" or "PCAOB") is imposing sanctions upon PricewaterhouseCoopers Zhong Tian LLP ("PwC ZT," the "Firm," or "Respondent"). The Board is:

(1) censuring the Firm;

(2) imposing a $3,000,000 civil money penalty on the Firm; and

(3) requiring the Firm to undertake certain remedial actions as described in Section IV of this Order.

The Board is imposing these sanctions on the basis of its findings that PwC ZT violated PCAOB rules and quality control standards over three years in connection with the Firm's internal training program.

I.

The Board deems it necessary and appropriate, for the protection of investors and to further the public interest in the preparation of informative, accurate, and independent audit reports, that disciplinary proceedings be, and hereby are, instituted pursuant to Section 105(c) of the Sarbanes-Oxley Act of 2002, as amended ("Act"), and PCAOB Rule 5200(a)(1) against Respondent.

Order
PCAOB Release No. 105-2023-044
November 30, 2023

## II.

In anticipation of the institution of these proceedings, and pursuant to PCAOB Rule 5205, Respondent has submitted an Offer of Settlement ("Offer") that the Board has determined to accept. Solely for purposes of these proceedings and any other proceedings brought by or on behalf of the Board, or to which the Board is a party, and without admitting or denying the findings herein, except as to the Board's jurisdiction over Respondent and the subject matter of these proceedings, which is admitted, Respondent consents to entry of this Order as set forth below.[1]

## III.

On the basis of Respondent's Offer, the Board finds that:[2]

### A. Respondent

1. **PricewaterhouseCoopers Zhong Tian LLP** is a special general partnership organized under Chinese law and headquartered in Shanghai, People's Republic of China. It is a member firm of the PwC network, of which PricewaterhouseCoopers International Limited is the coordinating entity ("PwC Global"). At all relevant times, PwC ZT was registered with the Board pursuant to Section 102 of the Act and PCAOB rules. During the period covered by this Order, the Firm annually served as the principal auditor for forty or more issuer audit clients.

### B. Summary

2. From 2018 until 2020, PwC ZT violated PCAOB rules and quality control standards related to integrity and personnel management by failing to establish appropriate policies and procedures for administering and overseeing internal training tests, including tests designed to help the Firm's audit professionals satisfy the requirements for maintaining their professional certifications. Those quality control failures prevented the Firm from identifying that hundreds of Firm professionals were involved from 2018 to 2019 in improper answer

---

[1]   The findings herein are made pursuant to Respondent's Offer and are not binding on any other person or entity in this or any other proceeding.

[2]   The Board finds that Respondent's conduct described in this Order meets the conditions set out in Section 105(c)(5) of the Act, 15 U.S.C. § 7215(c)(5), which provides that certain sanctions may be imposed in the event of: (1) intentional or knowing conduct, including reckless conduct, that results in a violation of the applicable statutory, regulatory, or professional standard; or (2) repeated instances of negligent conduct, each resulting in a violation of the applicable statutory, regulatory, or professional standard.

2

Order
PCAOB Release No. 105-2023-044
November 30, 2023

sharing – either by providing or receiving access to answers through unauthorized technology – in connection with online tests for mandatory internal training courses related to PwC ZT's U.S. auditing curriculum. Firm personnel engaged in the answer sharing primarily by sending or receiving software applications designed to access the correct answers for exam questions. Additionally, from 2019 to 2020, and as discussed more fully below, hundreds of Firm personnel used tools and took steps to improperly fast-forward through Firm trainings or to falsely record that they had completed Firm trainings. The overwhelming majority of the above groups of professionals performed work for the Firm's assurance practice.

### C.   PwC ZT Violated PCAOB Rules and Standards

#### i.   Applicable PCAOB Rules and Quality Control Standards

3.     PCAOB rules require that a registered public accounting firm comply with the Board's quality control standards,[3] which provide that a registered firm "shall have a system of quality control for its accounting and auditing practice."[4]

4.     As part of a firm's system of quality control, "[p]olicies and procedures should be established to provide the firm with reasonable assurance that personnel . . . perform all professional responsibilities with integrity."[5] In addition, PCAOB quality control standards related to personnel management state that "policies and procedures should be established to provide the firm with reasonable assurance that . . . [w]ork is assigned to personnel having the degree of technical training and proficiency required in the circumstances."[6] Moreover, "policies and procedures should be established to provide the firm with reasonable assurance that . . . [p]ersonnel participate in general and industry-specific continuing professional education and other professional development activities that enable them to fulfill responsibilities assigned, and satisfy applicable continuing professional education requirements of . . . regulatory agencies."[7]

---

[3]     *See* PCAOB Rule 3100, *Compliance with Auditing and Related Professional Practice Standards*; PCAOB Rule 3400T, *Interim Quality Control Standards*.

[4]     QC § 20.01, *System of Quality Control for a CPA Firm's Accounting and Auditing Practice*.

[5]     QC § 20.09.

[6]     QC § 20.13.b; QC § 40.02.b, *The Personnel Management Element of a Firm's System of Quality Control—Competencies Required by a Practitioner-in-Charge of an Attest Engagement*.

[7]     QC § 20.13.c; QC § 40.02.c.

Order
PCAOB Release No. 105-2023-044
November 30, 2023

5.      PCAOB quality control standards recognize that "[t]he elements of quality control are interrelated,"[8] and that monitoring procedures are necessary "to provide the firm with reasonable assurance that the policies and procedures related to each of the other elements of quality control are suitably designed and are being effectively applied."[9] Under PCAOB standards, monitoring involves an ongoing consideration and evaluation of, among other things, the effectiveness of professional development activities and compliance with the firm's policies and procedures.[10]

### ii.    Training Requirements for PwC ZT

6.      As part of PwC ZT's personnel management system, the Firm utilizes internal training programs for its audit professionals. The training programs the Firm uses are designed to serve multiple purposes, including to provide personnel with technical instruction, to further their professional development, and to help employees satisfy some of the continuing professional education requirements imposed by the accountancy boards that license PwC ZT's auditors. PwC ZT's training requirements are intended to be relevant to, among other things, the independence of their personnel, the audit work they perform, and the integrity with which they carry out their professional responsibilities. However, the training requirements can vary by a professional's position, role, and industry practice area. Since at least 2018, PwC ZT has required its personnel to take certain online courses that contain content regarding auditing of U.S. issuers.

7.      PwC Global plays a significant role in the development and deployment of the training programs PwC ZT uses. PwC Global has issued several Global Assurance Quality – Learning & Education standards that PwC ZT, as a member firm of the PwC network, is expected to comply with as part of PwC ZT's system of quality control. To comply with these standards, PwC ZT has elected to use training material provided by PwC Global to supplement trainings the Firm developed to satisfy local regulations and requirements. With respect to training tests PwC Global provides, PwC Global designs the tests, administers the platform that records test attempts and completions, and maintains certain exam-integrity measures like rotating banks of questions and randomizing the order of answer options.

---

[8]     QC § 20.08.

[9]     *Id.*; *see also* QC § 30.02, *Monitoring a CPA Firm's Accounting and Auditing Practice*; QC § 20.20.

[10]    *See* QC § 20. 20.c-.d; QC § 30.02.c-.d.

4

Order
PCAOB Release No. 105-2023-044
November 30, 2023

8. The internal trainings utilized by PwC ZT often include a testing component. For training courses with a testing component, the Firm does not credit personnel with completing the training until they satisfactorily pass the related test.

### iii. Failures by PwC ZT to Establish Adequate Quality Control Policies and Procedures Related to Integrity and Personnel Management

9. During 2018 and 2019, PwC ZT had in place certain quality control policies and procedures intended to address integrity and personnel management. The Firm had certain policies requiring that its personnel act with integrity generally, and starting in 2019, the Firm included in its annual training a module generally covering ethics and integrity. The Firm did not, however, communicate any specific warnings against improperly sharing answers to training tests, and its policies and procedures were not adequately designed to provide reasonable assurance that Firm personnel acted with integrity when taking internal training tests. Up through 2019, PwC ZT also employed certain monitoring procedures related to internal training, but those procedures were designed to track items like completion of trainings and tests, not to detect instances of improper answer sharing. It was not until August 2020 that PwC ZT added notices to the start of its mandatory training tests asking participants to confirm that they will not use any inappropriate means to complete the tests, including sharing answers.

10. As described below, these policies and procedures were inadequate to prevent or detect the extensive improper answer sharing on training tests that occurred among PwC ZT personnel over multiple years.

### iv. Widespread Improper Answer Sharing Regarding Internal Training Tests at PwC ZT

11. From at least 2018 to 2019, hundreds of PwC ZT Assurance personnel obtained access to answers for training tests in an unauthorized manner. Firm personnel did so through software applications capable of obtaining the correct test answers from the online test platform.

12. Instances of improper answer sharing primarily occurred in connection with two software applications: "vLearn" and "Lifeistooshort." The vLearn application, when run while a participant was taking an online training test, conducted a trial-and-error selection of each answer option offered in the test until the correct answers were selected (*i.e.*, without the participants having to input the answer selections themselves). The application was directed at the 2018 U.S. Curriculum Auditing Workshop – Assessment. Throughout 2018, hundreds of PwC ZT personnel downloaded the vLearn software application. Despite the high number of PwC

5

Order
PCAOB Release No. 105-2023-044
November 30, 2023

personnel who downloaded the vLearn application, no one reported the improper conduct to the Firm. The Firm learned about the vLearn application when a staff member at another PwC member firm made an internal report about it at that firm in December 2018.[11]

13.     By early 2019, the Firm had started an internal investigation and ascertained the names of the Firm personnel who had downloaded the vLearn application. Also at that time, it provided the technical specifications of the vLearn application to the network information security team for the PwC network ("NIS"), and requested the placement of a technological block on further use of the vLearn application in the PwC environment. However, the Firm merely gave a general explanation to NIS that vLearn was an undesirable software application that NIS should block; the Firm also did not inform PwC Global's assurance and learning education team that the vLearn application was a tool designed for improper answer sharing. PwC ZT's failure to share this information with PwC Global's assurance and learning education team, on which the Firm placed substantial reliance for significant aspects of its training program, compromised PwC Global's ability to evaluate the nature and extent of the threat and to assist PwC ZT in formulating potential defenses against future uses of software applications engineered to undermine the integrity of the trainings and related tests that PwC Global deployed to the Firm.

14.     About one year later, in December 2019, the Firm initiated a review of test completion times for all mandatory training tests on U.S.-related topics taken by Firm personnel in 2019. The review showed that some tests were completed after an unreasonably high number of attempts. By January 2020, PwC ZT investigated and learned that Lifeistooshort, another software application that automatically input the correct answers in online training tests for the test taker, had been downloaded by hundreds of Firm personnel over the course of 2019. No Firm personnel had reported the existence of the Lifeistooshort application to the Firm prior to the Firm's discovery of the application through its investigation. The Firm again requested that NIS institute a technological block, this time for the Lifeistooshort application. Again, though, the Firm merely gave a general explanation to NIS that Lifeistooshort was an undesirable software application that NIS should block; the Firm also did not inform PwC Global's assurance and learning education team that the Lifeistooshort application was a tool designed for improper answer sharing.

---

[11]     *See PricewaterhouseCoopers*, PCAOB Rel. No. 105-2023-043 (Nov. 30, 2023) (re PwC Hong Kong).

Order
PCAOB Release No. 105-2023-044
November 30, 2023

15. After learning of the vLearn and Lifeistooshort applications, the Firm ascertained the names of those personnel who had involvement with the applications and created a plan to sanction them.

16. Despite first becoming aware of Firm personnel's extensive dissemination of the vLearn application in January 2019, it was not until August 2020 that the Firm sent a firm-wide communication to its personnel specifically prohibiting the sharing of answers for the purpose of completing training tests. This communication was in the form of a screen at the beginning of all mandatory training tests informing the test taker of the policy and asking the test taker to confirm that he or she will complete the test individually.

17. The Firm also took years to report to PwC Global the nature of the two answer sharing applications and that hundreds of personnel downloaded the applications. In fact, it was not until September 2022, in response to events initiated by the PCAOB, that the Firm finally told the PCAOB and PwC Global about these details.

### v. Fast-Forwarding Through Online Firm Trainings at PwC ZT

18. In March 2020, the Firm conducted a review of completion times for mandatory online trainings that did not include a testing component, and that Firm personnel completed between April 2019 and December 2019. It also began monitoring the completion times for certain mandatory online trainings going forward through 2020. Based upon that review and ongoing monitoring, the Firm learned that, throughout 2019 and 2020, over one hundred PwC ZT personnel improperly fast-forwarded through internal trainings at speeds too fast to allow comprehension of the material, or utilized tools to mark their training sessions as complete when the sessions had not actually been completed. Through PwC ZT's internal investigation, the Firm ascertained the names of these personnel and created a plan to sanction them. The Firm also learned subsequent to 2020 that improperly launching more than one online training course simultaneously could also be done as a means of improperly fast-forwarding. As mentioned below, the Firm has taken steps to monitor and remediate that issue, along with other forms of fast-forwarding conduct.

\*     \*     \*

19. As illustrated by the misconduct described above, from at least 2018 to 2020, PwC ZT failed to establish policies and procedures, including monitoring procedures, to provide the Firm with reasonable assurance that (1) PwC ZT personnel performed all professional responsibilities with integrity; (2) PwC ZT personnel had the degree of technical training and proficiency required in the circumstances; and (3) PwC ZT personnel participated in general and

7

Order
PCAOB Release No. 105-2023-044
November 30, 2023

industry-specific continuing professional education that enabled them to fulfill responsibilities assigned and satisfy applicable continuing professional education requirements of regulatory agencies. Accordingly, the Firm violated PCAOB quality control policies related to integrity and personnel management.[12]

### IV.

In view of the foregoing, and to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports, the Board determines it appropriate to impose the sanctions agreed to in Respondent's Offer.

In ordering sanctions, the Board took into account the Firm's extraordinary cooperation in this matter.[13] The Firm provided substantial assistance to the PCAOB's investigation by sharing the results of the Firm's extensive investigation to uncover hundreds of Firm personnel who had downloaded the vLearn and Lifeistooshort applications, as well as personnel who had used tools to fast-forward through trainings or falsely mark them as completed as described above. The Firm also performed forensic examinations of computer records and laptops to develop evidence showing how individuals used the applications. Additionally, the Firm subsequently instituted remedial measures to address the above-described issues, including conducting periodic searches across certain Firm systems to identify improper answer sharing, requiring personnel to re-take certain training and testing, and enhancing the quantity and quality of communications to personnel about the Firm's policy against providing or receiving improper assistance with Firm training tests. Absent the Firm's extraordinary cooperation, the civil money penalty imposed would have been larger, and the Board may have imposed additional sanctions.

Accordingly, it is hereby ORDERED that:

   A.   Pursuant to Section 105(c)(4)(E) of the Act and PCAOB Rule 5300(a)(5), PricewaterhouseCoopers Zhong Tian LLP is hereby censured;

   B.   Pursuant to Section 105(c)(4)(D) of the Act and PCAOB Rule 5300(a)(4), a civil money penalty in the amount of $3,000,000 is imposed on PricewaterhouseCoopers Zhong Tian LLP.

---

[12]   *See* QC § 20.09, .13.b-.c, .20; QC § 30.02; and QC § 40.02.b-.c.

[13]   *See Policy Statement Regarding Credit for Extraordinary Cooperation in Connection with Board Investigations*, PCAOB Rel. No. 2013-003 (Apr. 24, 2013).

Order<br>
PCAOB Release No. 105-2023-044<br>
November 30, 2023

1. All funds collected by the Board as a result of the assessment of this civil money penalty will be used in accordance with Section 109(c)(2) of the Act.

2. PricewaterhouseCoopers Zhong Tian LLP shall pay this civil money penalty within ten (10) days of the issuance of this Order by (1) wire transfer in accordance with instructions furnished by Board staff; or (2) United States Postal Service postal money order, bank money order, certified check, or bank cashier's check (a) made payable to the Public Company Accounting Oversight Board, (b) delivered to the Office of Finance, Public Company Accounting Oversight Board, 1666 K Street, N.W., Washington, D.C. 20006, and (c) submitted under a cover letter which identifies PricewaterhouseCoopers Zhong Tian LLP as the Respondent in these proceedings, sets forth the title and PCAOB release number of these proceedings, and states that payment is made pursuant to this Order, a copy of which cover letter and money order or check shall be sent to Office of the Secretary, Attention: Phoebe W. Brown, Secretary, Public Company Accounting Oversight Board, 1666 K Street, N.W., Washington, D.C. 20006.

3. With respect to any civil money penalty amounts that PricewaterhouseCoopers Zhong Tian LLP shall pay pursuant to this Order, PricewaterhouseCoopers Zhong Tian LLP shall not, directly or indirectly, (a) seek or accept reimbursement or indemnification from any source including, but not limited to, any current or former affiliated firm or professional or any payment made pursuant to any insurance policy (except Respondent may seek or accept reimbursement or indemnification of any civil money penalty amounts from self-insurance provided through a captive insurer owned by Respondent and/or other firms within the network of which Respondent is a member that provides insurance solely to Respondent and other firms within that network); (b) claim, assert, or apply for a tax deduction or tax credit in connection with any federal, state, local, or foreign tax; nor (c) seek or benefit by any offset or reduction of any award of compensatory damages, by the amount of any part of PricewaterhouseCoopers Zhong Tian LLP's payment of the civil money penalty pursuant to this Order, in any private action brought against PricewaterhouseCoopers Zhong Tian LLP based on substantially the same facts as set out in the findings in this Order.

4. If timely payment is not made, additional interest shall accrue at the federal debt collection rate set for the current quarter pursuant to 31 U.S.C. § 3717. Payments shall be applied first to post-Order interest.

9

Order<br>
PCAOB Release No. 105-2023-044<br>
November 30, 2023

      5. PricewaterhouseCoopers Zhong Tian LLP understands that failure to pay the civil money penalty described above may result in summary suspension of its registration, pursuant to PCAOB Rule 5304(a), following written notice to Respondent at the address on file with the PCAOB at the time of the issuance of this Order.

C.    Pursuant to Section 105(c)(4)(G) of the Act and PCAOB Rule 5300(a)(9), PricewaterhouseCoopers Zhong Tian LLP is required:

      1. Within 120 days of the entry of this Order, to establish, revise, or supplement, as necessary, policies and procedures, including monitoring procedures, to provide the Firm with reasonable assurance that (a) personnel perform all internal training and tests associated with such training with integrity; (b) personnel to whom work has been assigned have the degree of technical training and proficiency required in the circumstances; (c) personnel participate in general and industry-specific continuing professional education that enable them to fulfill responsibilities assigned and satisfy applicable continuing professional education requirements of regulatory agencies; and (d) the above-described policies and procedures are suitably designed and are being effectively applied.

      2. Within 120 days of the entry of this Order, to examine the extent to which the Firm implemented the sanctions it planned to impose on its personnel in connection with the events involving the vLearn or Lifeistooshort software applications, the improper fast-forwarded through internal Firm trainings, and the use of tools to mark Firm training sessions as complete when they had not actually been completed; and to the extent such planned sanctions have not yet been imposed as of the entry of this Order, to impose such planned sanctions on any such personnel currently employed at the Firm.

      3. Within 150 days of the entry of this Order, to provide a certification, signed by its CEO, to the Director of the PCAOB's Division of Enforcement and Investigations, stating that the Firm has complied with paragraphs IV.C.1.-2. above. The certification shall identify the actions undertaken to satisfy the conditions specified above (including any remedial actions taken prior to the date of this Order), provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. PricewaterhouseCoopers Zhong Tian LLP shall also submit such

**10**

Order<br>
PCAOB Release No. 105-2023-044<br>
November 30, 2023

additional evidence of, and information concerning, compliance as the staff of the Division of Enforcement and Investigations may reasonably request.

ISSUED BY THE BOARD.

/s/  Phoebe W. Brown

_____

Phoebe W. Brown
Secretary

November 30, 2023



 Careers

 Subscribe

About     Oversight     Resources     News & Events

Home  >  News & Events  >  News Releases

# Imposing $7.9 Million in Total Fines, PCAOB Sanctions Three China-Based Firms and Four Individuals in Historic Settlements

Hundreds of individuals at PwC China and PwC Hong Kong engaged in training exam misconduct; mainland China-based firm, Shandong Haoxin, and four of its associated persons violated U.S. securities laws and PCAOB rules and standards

Washington, DC, Nov. 30, 2023

The Public Company Accounting Oversight Board (PCAOB) today announced three settled disciplinary orders sanctioning three China-based firms and four individuals for violations of the U.S. securities laws and PCAOB rules and standards.

These are the first enforcement settlements with mainland Chinese and Hong Kong firms since the PCAOB secured historic access to inspect and investigate firms headquartered in China and Hong Kong in 2022. The sanctions include the highest civil money penalty the Board has imposed against a China-based firm and one of the highest penalties the Board has imposed against any firm. The sanctions also include a requirement – for the first time ever in a Board disciplinary order – that a China-based firm retain an independent monitor.

**"The days of China-based firms evading accountability are over. The PCAOB will take action to protect investors on U.S. markets and impose tough sanctions against anyone who violates PCAOB rules and standards, no matter where they are located,"** said PCAOB Chair Erica Y. Williams. **"I want to thank the U.S. Congress for its leadership in passing the Holding Foreign Companies Accountable Act, which created the leverage for the PCAOB to secure the historic access which made these enforcement actions possible."**

The orders are for the following:

- Two disciplinary orders imposing a total of $7 million in penalties against two registered public accounting firms within the PwC global network, Shanghai-based PricewaterhouseCoopers Zhong Tian, LLP ("PwC China") and Hong Kong-based PricewaterhouseCoopers ("PwC Hong Kong"), for violating PCAOB quality control standards related to integrity and personnel management; and

- A disciplinary order imposing immediate practice limitations (including prohibitions on accepting new PCAOB audit clients), an independent monitor to improve practices and ensure compliance, $940,000 in fines, and bars against individuals at **Shandong Haoxin Certified Public Accountants Co., Ltd. ("Haoxin")**, a mainland China-based registered public accounting firm, and four of its associated persons for violations that include issuing a false audit report, failing to maintain independence from their issuer client, and improperly adopting the work of another accounting firm as their own.

**"The Board's groundbreaking sanctions on these two PwC affiliates and Haoxin demonstrate the global reach of the PCAOB's inspection and enforcement programs and its commitment to rooting out misconduct, wherever it occurs,"** said Robert E. Rice, PCAOB Director of Enforcement and Investigations. **"These matters should send the message to all registered firms and their associated persons, wherever located, that the PCAOB will continue to be rigorous in its approach to enforcement matters and will employ all sanctions at its disposal to deter misconduct and improve audit quality."**

The PCAOB appreciates the assistance of the U.S. Securities and Exchange Commission.

# PwC China and PwC Hong Kong: Two Disciplinary Orders Imposing $7 Million in Penalties

The PCAOB sanctioned **PwC China** and **PwC Hong Kong** for violating PCAOB quality control standards related to integrity and personnel management. Both firms failed to detect or prevent extensive, improper answer sharing on tests for mandatory internal training courses. From 2018 until 2020, over 1,000 individuals from PwC Hong Kong, and hundreds of individuals from PwC China, engaged in improper answer sharing – by either providing or receiving access to answers through two

unauthorized software applications – in connection with online tests for mandatory internal training courses related to the firms' U.S. auditing curriculum. The overwhelming majority of the professionals implicated in the answer sharing performed work for the firms' Assurance practices.

Without either firm admitting or denying the findings in the orders concerning the improper answer sharing, PwC Hong Kong was censured and agreed to pay a $4 million civil money penalty, and PwC China was censured and agreed to pay a $3 million civil money penalty. Both firms are required to review and improve their quality control policies and procedures to provide reasonable assurance that their personnel act with integrity in connection with internal training, and to report their compliance to the PCAOB within 150 days.

PCAOB enforcement staff members David Florenzo, Thomas McCann, and K. Lynn Dunston conducted the investigation. William Ryan and John Abell supervised these two matters.

# Shandong Haoxin and Four Individuals: $940,000 in Penalties, Immediate Practice Limitations, and an Independent Monitor to Improve Practices and Ensure Compliance; Bars of Individuals

- Firm: $750,000

- Individuals: $190,000

The PCAOB sanctioned **Haoxin and four of its associated persons**, LIU Kun ("Liu"), MA Yao ("Ma"), SUN Penghuan ("Sun"), and ZHU Dawei ("Zhu"), for violations of the U.S. securities laws and PCAOB rules and standards in connection with the audits of the 2015-2017 financial statements of Gridsum Holding Inc. ("Gridsum").

Among other things, the PCAOB found that:

- Haoxin violated the U.S. securities laws by issuing an audit report falsely stating that the firm's audits of the 2015-2017 financial statements of Gridsum had been performed in accordance with PCAOB standards and that Haoxin was independent of Gridsum, when Haoxin knew, or was reckless in not knowing, that its audits did not comply with PCAOB standards and that it was not independent of Gridsum.

- Liu, the engagement partner for the Gridsum audits, and Ma, the engagement quality reviewer, recklessly contributed to the firm's violations of the U.S. securities laws and PCAOB rules and standards.

- Haoxin, Liu, Ma, Sun, and Zhu violated independence requirements and/or PCAOB auditing, ethics, and/or quality control rules and standards. Among other violations, Haoxin and the engagement team improperly relied on a predecessor auditor's draft work papers, adopted those draft work papers as their own, and performed limited additional procedures before issuing an unqualified audit opinion on Gridsum's 2015-2017 financial statements. In addition, Haoxin, Liu, and Ma violated relevant independence requirements by informing Gridsum that they expected to issue an unqualified opinion before Gridsum had actually engaged Haoxin as its external auditor.

- Haoxin and Zhu failed to cooperate with the investigation conducted by the PCAOB Division of Enforcement and Investigations by providing false information.

Without admitting or denying the Board's findings, Haoxin and the individual respondents settled with the PCAOB and consented to the disciplinary order.

- Haoxin was censured and agreed to pay a civil money penalty of $750,000 and to accept immediate practice limitations, including prohibitions on accepting new PCAOB audit clients and a requirement for pre-issuance reviews.

- Haoxin also agreed to remedial undertakings, including to retain (at the firm's expense) an independent monitor who will review and advise the firm on its policies and procedures, ensure the firm complies with the requirements of the order, and report back to the PCAOB. Additional agreed undertakings include requirements for further training for staff involved in PCAOB audits and a review and modification or supplementation of the firm's quality control policies and procedures. The order bars Liu, Ma, Sun, and Zhu from being associated persons of a registered public accounting firm. Liu, Ma, and Sun may file petitions for Board consent to associate with a registered public accounting firm after the expiration of four years, two years, and one year, respectively from the date of the order. The order limits Ma's activities for an additional one year if the Board later consents to her association with a registered firm.

- Liu, Ma, Sun, and Zhu agreed to pay civil money penalties of $100,000, $50,000, $20,000, and $20,000, respectively, and were censured. Liu, Ma, and Sun also agreed to complete 50 hours of additional continuing professional education. In consideration of their financial resources, the civil monetary penalties for Ma and Zhu were lowered from $75,000 and $120,000, respectively.

PCAOB enforcement staff members Melissa R. Handrigan, R. Davis Taylor, Tony Chen, Sherry Tao, Michael Rosenberg, and Kristina Shin conducted the investigation. William Ryan and John Abell supervised this matter.

The PCAOB oversees auditors' compliance with the Sarbanes-Oxley Act, provisions of the securities laws relating to auditing, professional standards, and PCAOB and SEC rules.

Further information about the PCAOB Division of Enforcement and Investigations is **available on the PCAOB website**. Firms or individuals wishing to report suspected misconduct by auditors, or to self-report possible misconduct, may visit the PCAOB **Tips and Referrals page**.

*****

# About the PCAOB

The PCAOB is a nonprofit corporation established by Congress to oversee the audits of public companies in order to protect investors and further the public interest in the preparation of informative, accurate, and independent audit reports. The PCAOB also oversees the audits of brokers and dealers registered with the Securities and Exchange Commission, including compliance reports filed pursuant to federal securities laws.

# Contact

PCAOB Office of Communications and Engagement

Media@pcaobus.org

About

Oversight

Resources

News

Submit a Tip

Comment Now

AuditorSearch

Register

## Subscribe to our Newsletter

* indicates required

Email address *

Email

I identify myself as a(n): *

Select one…

What type of updates would you like to receive? *